Okay, our third case this morning are numbers 25-2807 and 25-2916 United States against Richardson Dangleben Jr. Mr. Glasser? May it please the court. William Glasser along with U.S. Attorney Adam Sleeper for the United States. I'll reserve three of my 20 minutes for rebuttal and Mr. Sleeper will then address the 924C issue. Very good. By striking the notice of intent to seek the death penalty, the district court failed to give proper deference to the Federal Death Penalty Act's reasonable time requirement and to the discretion of the executive branch. The Supreme Court has long recognized that the executive branch ordinarily remains free before trial to bring charges at any point. The FDPA adds an additional requirement which says that if we're going to seek the death penalty to heighten those charges, we need to give proper notice a reasonable time before the trial. In this case, the government filed its notice of intent to seek the death penalty a reasonable time before the trial which had been scheduled just the day before and the district court erred in striking the indictment, excuse me, the notice of intent based on the expiration of a deadline that had been tied to a much earlier trial date before the trial had been continued by about a year. Is it your argument, Mr. Glasser, that section 3593A displaces the district court's inherent power to set deadlines? No, Your Honor. I wouldn't say that it displaces. It certainly doesn't displace entirely. So, this isn't like some of the contexts where the Supreme Court has addressed the exercise of inherent authority that directly conflicts with a rule. I think the better way to look at it would be to say that it imposes some limits upon the district court's inherent authority. I appreciate that. So, let's try to work through what those limits might be and what limits the government might have. I mean, I assume you're not arguing that the government could, as a matter of course, file no-seek notices and then, a few months before the trial, file a seek notice. Your Honor, no, we certainly wouldn't say that that's something we can ordinarily do. I mean, I think here, this context is a little bit different because the trial was continued. But that's also, I'd just point out, not something that the government regularly does in any event, because even the government has an interest in ensuring early notice that the case is going to be a death penalty case. Right. When it's a death penalty case, that puts into motion a tremendous amount of activity that is sui generis. It's unique to the death penalty context, correct? I completely agree, Your Honor. Starting with the payment of learned counsel. Yes, that's right. Okay. And what's curious about this case, there are many curious aspects, but one is that there is apparently a history or a custom of filing these no-seek notices, but the statute doesn't talk about that. The statute talks about seek notices. That's right. Can you educate us a little bit about that custom of no-seek notices, where it came from, and how it's progressed over time? Your Honor, I wish I knew the history better. I think it is something that is at least implicitly contemplated in the Department of Justice manual. I think the practice arose because ordinarily, by nature of setting a deadline to file a seek notice, if a government either moves past that deadline without filing something or files something saying, we don't intend to seek it, by its very nature, looks like a no-seek notice. I think that practice, it goes back a long time. I don't know if it goes back to the enactment of the Federal Death Penalty Act, but it goes back a long time where the district courts have said, give notice by a particular time, ordinarily tied to a trial date, and the government either gives notice that it intends to seek the death penalty or says, we don't intend to seek it. I think the reason we filed a no-seek indication is that we want to alert the court that we're not just skipping the deadline. Okay, terrific. Do you have any cases where a no-seek notice was filed, whether formal or informal, and then the case proceeded to trial as a death case? Your Honor, I'm not aware of any off the top of my head. All right, so this would be the first. There's a first time for everything, so it doesn't mean it's necessarily wrong, but this would be the first. Your Honor, I think that's right. Again, I haven't canvassed the entire history. Let me try this on for size. What if we suppose that in some cases, there might be a really good reason why the government would change its position from no-seek to seek? The government gets new evidence. Government supersedes a lot, right? There could be really good reasons why the government changes its mind from no-seek to seek. That's a softball. You agree with that? Absolutely agree with that. Okay. Other cases, perhaps, where the government might just change its mind without new evidence. Right. This seems to be that type of case. Your Honor, yes. I think this case is based on a re-evaluation of the evidence that the government already had, as opposed to finding new evidence relevant to the decision whether to seek or not. Was it really a re-evaluation, or was it more a policy change? Wasn't this simply the prior administration being either less interested or disinterested in pursuing federal death penalty cases, and the current administration being interested in pursuing death penalty cases? Your Honor, I think that is one real politic way of explaining what happened here, but from an institutional perspective, it was the current Attorney General saying, we're going to re-evaluate our prior decisions and just determine whether, on the evidence that we have, it's appropriate to seek the death penalty. Okay. One more softball before the hard questions come. Let's assume that an outgoing administration, after an election, filed no-seek notices as a matter of course in all cases that might have been federal death penalty eligible in December. The new administration is inaugurated in January, and the new administration reverses all of those across-the-board decisions. It happens within a matter of a couple of months. It's an important policy change. In many cases, there would be no prejudice to the defendant because of the transpiring of a very short amount of time. Obviously, you would agree that you should be entitled to do that. Yes. Yes, Your Honor. We think the executive branch has that discretion. All right. Now, we start with the hard questions. All right. I'm ready. This is the opposite of that. This case was going on for quite a long time. The no-seek notice was filed a very long time prior. The government didn't seek to rescind the no-seek notice. The government didn't seek to amend the no-seek notice. Where is the cause? What can you proffer to say that it was an abuse of discretion for the district judge to hold the government to its representations that this was not a death penalty case? Your Honor, there were several things baked into your question. I think I'm going to give you some responses to that. First of all, with respect to the time that has elapsed, it is true that the government filed its notice of intent here about 14 months after it had filed the previous no-seek, we can call it a notice. I would also point out that the original deadline that in February of 2024 was tied to an October 2024 trial date. The trial date was vacated, and the trial was continued indefinitely. The district court said, we'll set a trial date when we get around to the omnibus hearing at which we determine all of the pending motions. That trial date was then only reset for October 2025, the day before the government filed its notice. Judge Meeks, you have a question? I wanted to let you finish that sentence of brief. That's with respect to the time. I think there's a few more things baked into Judge Hardiman's question I'd like to return to. Let's grant all of that. Still, there's a powerful brief that you defend and prepare for a death case differently. The district judge referred to this in light sport. It's true that you do a level of mitigating evidence research. We're not talking about a few weeks here, even a month or two. We're talking about nearly two years of defending a case that would have been defended differently. Isn't that enough detrimental reliance that the district court was within its discretion to say, just too much water under the bridge here? No, Your Honor. I don't think so. Again, this goes back to the discretion of the executive to bring additional charges. If we bring a superseding indictment that adds a new charge, let's say we add a 924J charge and we're seeking life imprisonment as opposed to a statutory maximum of 15, 20, 25 years, that can also affect trial strategy. It affects what the government has to prove. It affects what the defendant must defend against. There's no constitutional right. Yeah, the court doesn't get to step into that. That's an executive function, but this Federal Death Penalty Act says that when you want to amend a seat notice because you've got new aggravating factors, you need good cause. How could you not require something like good cause here to completely blow up the no seat notice? Your Honor, the Federal Death Penalty Act requires good cause to amend a prior notice. The word notice there refers back to a notice of intent to seek the death penalty. In this case, there was no notice of intent to seek the death penalty until May of this year. There was no prior notice to amend under the words of the statute. So you're saying this wasn't an amendment at all? Absolutely, that's correct. How would you describe it? This was a notice of intent to seek the death penalty, a first initial notice. And we do still have to comply, Judge Hardiman, with the reasonable time before the trial requirement. So to the extent the court is concerned about protecting the right of the defendant to defend against the death penalty, that Congress has already balanced that concern in the Federal Death Penalty Act and said we have to file a notice of intent to seek the death penalty a reasonable time before trial. Now, if we choose to amend that, we may do it actually, you know, even a week before trial sometimes. If the defense had any inkling that the government could do this, they're not going to consent to an extent of the trial. They're going to stick with the original trial date and it would follow that it's more likely that your notice is not timely. Your Honor, there's a level of sort of game theory and gamesmanship here that seems to be inimical to what we want in trials generally and especially homicide trials. Your Honor, I think the defense interest in sort of strategically rushing to trial to prevent the government from changing its mind, I don't think is a constitutionally cognizable reliance interest. I think to the extent the concerned about, you know, gamesmanship here, again, the reasonable time before the trial requirement in the Federal Death Penalty Act already addresses that. And if I may, Judge Hardiman, I think your original tough question to me had one more element to it that I'd like to address and that is that the government here didn't seek to modify the deadline and didn't seek relief from the original deadline that the district court had set. And I would just point out, I think we made this clear in our brief, the government here gave more than adequate notice to both the district court and the defendant throughout this process that it was reevaluating what it was doing. So it's true that the government didn't file, the district court noted, we didn't file something seeking relief. Yeah, but that was after about a year transpired. Yes, Your Honor. I mean, what's supposed to happen during that year? Nothing? Is the defense supposed to sit on its hands because the government might change course and file a seek notice? Obviously not. No, Your Honor. The defense is actively preparing for a trial. That's correct. And the government and the defense, in doing so, is not concerned about certain things. The defense is not concerned about, is my client going to be executed? Do I have to perhaps strategically focus on the penalty phase rather than the liability phase? We've got that Supreme Court case from decades ago out of Florida where the Supreme Court said it was not ineffective assistance of counsel for counsel to stand up and throw in the towel on liability to try to save his client's life at the penalty phase. That's right. You've got investigators. If it's a death case, you might, as a defense lawyer, be heavily focused on penalty and not liability. If the evidence is overwhelming, right? Yes, Your Honor. I don't disagree with any of that. And all of that year's worth of activity gets completely upended when the government changes course in this case. Your Honor, I wouldn't say that it's completely upended. I mean, the government here was complying with its discovery obligations. In fact, it came over much of the discovery within a month or two of the indictment. And there was motions practice ongoing. The defense intended to consult experts sort of for guilt-related issues, completely separate from any potential death penalty. So I would push back on that just a little bit. But I don't dispute that the nature of the proceedings changed significantly, we might even say dramatically, upon the filing of the notice of intent to seek the death penalty. But that does not mean that the government was prohibited from doing so. And it does not mean that the district court properly applied a deadline tied to a trial date that later moved. You analogize this as superseding. I want to just focus on jurisdiction here. 3731 jurisdiction seems to depend on whether this is, in essence, dismissing part of the indictment. But this is a separate document. Should we treat this as, in effect, a superseding indictment once it's filed? Your Honor, it's certainly not the same thing as a superseding indictment. I think for purposes of this court's jurisdiction under 3731, though, it is fairly treated as an order, quote, dismissing an indictment as to one or more counts or any part thereof. That's 3731. And the reason, as other circuits have explained, is that, in effect, it is dismissing a part of a charge. So in the post-Apprendi, post-Ring v. Arizona world of death penalty cases, when the government seeks to impose the death penalty, even under the FDPA itself, we have to prove additional factors. We have to prove some statutory eligibility factors, and we have to prove at least one aggravating factor that outweighs any mitigating factors. And so that creates a sort of heightened crime of capital eligible 924C or J. So per Apprendi, Ring, et cetera, we're treating this like it's a more serious variety of murder. Even though they don't quite call it an element, it is functionally an element. It has to be proven like an element, the same proof beyond a reasonable doubt standard. That's right. And, Your Honor, I would just point out that 3731 in that Congress said that the provision should be liberally construed to effectuate its purposes. And I think we have good arguments, even under the collateral order doctrine, given the double jeopardy restrictions on our ability to appeal from a conviction on non-capital accounts. We certainly can't appeal from an acquittal. When we're considering whether the seek notice is given within a reasonable time, are we looking prospectively to the trial date? Are we looking backwards to see when that trial was set? Are we looking at the whole life of the case? What's the context for reasonable time? Sure. So, Your Honor, I think it's important to be looking prospectively to the trial that ultimately occurs because it says a reasonable time before the trial or the guilty plea. And so clearly the trial is the appropriate focus. Now, I understand the other side's concern about the benefits of notice being early. And I see Judge Hardiman, I'm going over time if I may answer the question. It is helpful to have the notice as early in the proceedings as possible, but Congress, in enacting the FDPA, set the question, it relates to the trial that ultimately happens. So we point to the 11th Circuit's decision in Wilk, which says that when considering a reasonable time before trial, you can consider reasonable continuances that might be granted. So it's not true that because there is always a possibility of a continuance that any time can be reasonable. At a certain point, a notice no longer is a reasonable time before the trial. This seek notice was given four months before the scheduled trial date? Yes, Your Honor, four and a half. And again, as we explained in the brief, that trial date had sprung into existence the day before. And so although, you know, sort of looked at with blinders on four and a half months seems like a very short time in order to prepare for a capital trial from the government's or the defense perspective. But again, we think reasonable continuances could be taken into account. And also, even under the Fourth Circuit's approach, the court can consider when the trial would have actually been on non-capital counts. I would just note with respect to the complexity of this case, although designated a complex case for purposes of the Speedy Trial Act, the government estimated its non-capital case to take four days. The defense estimated on the outside a non-capital sense of one day. And the only aggravating factor here that went beyond the facts that the government had essentially had to prove anyway on non-capital counts was the aggravator related to the death, the prior homicide. And the facts in that prior homicide were not really in dispute in terms of his guilt. So Mr. Dangleman admitted to killing the victim there. And the only dispute was whether or not he acted in self-defense. So four and a half months might have been too short, but a sometime, you know, slightly beyond that with a reasonable continuance would have been a reasonable time in order to prepare a death penalty defense. Let's say that, take away some of the facts that are specific to the case, like the vacation of the first trial date and then a year of inactivity or the change in administration. Let's just say there was a two-year, you know, runway from the indictment to the trial. And in 24 months, in the 19th or 20th month, the government filed a seek notice. Would that be a reasonable time? Your Honor, it could be. I think it would depend on the facts of the case. I mean, I think we cited some EDVA cases where that court's rocket dock at bay, the court found that I think 112 days maybe was the shortest period was in a reasonable time before the trial. Those are fairly simple death penalty cases. I would say, you know, that's not the average. And should we consider the fact that a year went by with no activity, no trial date, and then only when the government alerted everyone you were about to change the seek notice, the no seek to a seek notice, the judge kind of snapped a new trial date on you. Should we consider that? Your Honor, I think you should consider, yes, you should consider that among all of the circumstances. I don't want to, you know, there's some dispute as to the extent which this was surprising that the district court set a trial date then. We knew a trial date was coming, but the district court said it would be set at the omnibus hearing, which wasn't that status hearing in May of this year. It was not until that same hearing that scheduled the trial date. So yes, I think you should consider those facts when, you know, considering the reasonable time before the trial. This isn't sort of a case where the trial date has been set in stone for months and months in advance or years in advance. And that's certainly part of the overall reasonable inquiry. I'm a little concerned that your answer to Judge Porter's question suggests that there's no real limiting principle here. If two years can go by, if the only consideration here is the trial date, a reasonable time before trial, in any jurisdiction where the judge waits to schedule a trial until the parties announce that they're both ready or that discovery is concluded, et cetera, there's really no limiting principle. Is that your argument? Well, Your Honor, I don't think that the FDPA includes a limiting principle in terms of, you know, indictment to trial time period, but the Speedy Trial Act and the Speedy Trial Clause both do speak to that. I would just note there hasn't been any invocation of the speedy trial rights in this case to this point. All right. So your limiting principle is that if we rule your way on this issue, defendants are unnoticed, that if your case might become death eligible, then you better go to trial quickly before the government can change its mind from no-seek to seek. Your Honor, that might be one implication of accepting the government's argument, I think a defendant always runs the risk of the government superseding or, you know, finding new evidence that increases the... But educate us on that a little bit, because I don't remember it ever happening when I was a trial judge, but I'm sure it has. What has happened when a whole bunch of work has gone into a case, let's say it was a fourth superseding indictment, not unusual, I saw that plenty of times. You got a fourth superseding indictment, everybody's moving around to a trial, six months goes by between the fourth superseding indictment and, let's say, May 1. Trial's scheduled for May 10. And you've got a six-month gap between the fourth superseding indictment and May 1. On May 1, the government shows up with a fifth superseding indictment. Well, you've just... If I'm a trial judge, you've just blown up my trial day of May 10. So how can we in the third branch respect the executive branch's prerogative to bring charges against people while at the same time administering justice in a regular, fair, and appropriate manner? I assume you would agree that under my hypothetical, that can't be countenanced. Your Honor, I would say that it certainly couldn't go to trial that quickly in ordinary circumstances, unless there was a minor change in the fifth superseding. And what I have seen, Your Honor, is I've seen district judges saying to the government, look, tell me if you're going to supersede. I need to know that for planning purposes, right? And that's perfectly legitimate. Well, if judges can do that, can judges count on the representation, no, I'm not superseding. Your Honor, I think in the ordinary course they can, yes. But why can't they count on the government's representation, no, we're not seeking the death penalty? Your Honor, I think a few reasons in this case. First of all, the government made that representation based on a deadline tied to a trial date that was later continued by more than a year. Second, although certainly we're not saying that the government can go back on its word, I do think there are important executive branch considerations here. The executive branch's discretion to bring new charges is not a traditional scenario where the government makes a representation to the court. The government retains certain discretion to bring additional charges, regardless of the court's preferences of when it would do so. And so I think a court's proper respect to the executive branch would say that in that case, the government drops the superseding indictment last minute. The court would say that we're going to have to continue the trial if we can't try it in a week. Now, if the defense- Why couldn't the court say we're going to trial on the first superseding indictment, and then if you want to indict him for something else or something additional after this trial, go ahead? Your Honor, that may, I suppose that may raise quite joinder questions, but that may be one possibility. I don't think- Why isn't that a possibility here? I guess you're going to say because it's double jeopardy, right? Your Honor, yes. If we obtain the conviction under 924J, non-capital double jeopardy principles would apply. Except you're saying if this is an aggravated version, in theory, you can go back and prove the aggravator. It's not an acquittal, it's a conviction. That's an interesting question, Your Honor. I'm not sure whether we could procedurally do that under the Federal Death Penalty Act. That would be a tough, I think, Blockberger question, whether we would still be sort of proving, whether we need to prove the underlying offense without the aggravator. I hadn't thought of that question. If the court has no further questions, I'd refer you to the rest of the time. Thank you, Mr. Glasser. Mr. Sleeper? Good morning, Your Honors. Adam Sleeper for the United States. I'm going to start with the lack of ambiguity before moving to the absurdity doctrine, unless the court would prefer otherwise. Section 924C provides for punishment when any person takes certain actions with a firearm during any crime of violence or drug trafficking crime for which the person may be prosecuted in a court of the United States. Title 18 further defines court of the United States to include the District Court of the Virgin Islands. The plain text of this statute is applicable here. The defendant is any person who took that action with a firearm, and the person, the defendant, may be prosecuted in the District Court of the Virgin Islands, which Congress has specified is a court of the United States. Even if that plain text were not as clear as the government contends it is, the 1986 amendments to this act further shed light on this question. In 1986, Congress amended Section 924C to add a definition of drug trafficking crime that provided any felony violation of federal law involving the distribution, manufacture, importation of any controlled substance, and then limited it to the controlled substances in the Controlled Substances Act. At the same time, Congress added a crime of violence definition and for the first time required that a crime under the force clause be a felony without including any similar restriction that it be a felony violation of federal law. This amendment shows two things. First, on the rule of surplusage, it shows that felony violation of federal law is more narrow than the crime for which a defendant can be prosecuted in a court of the United States, and it also shows that if Congress had wanted to limit crimes of violence to violations of federal law, it knew how to do so. Now, I think significantly, you know, my friend on the other side in their brief, they talk about, well, it may have been ambiguous whether or not the District Court of the Virgin Islands was a court of the United States at the time, but what wasn't ambiguous was whether D.C. District Court was a court of the United States at the time, and it has the same type of jurisdiction. Yeah, let's talk about that. The 2014 decision of the D.C. District Court in Brown, is there any way to reconcile that court's analysis with your reading of 924C? I don't think there is, Your Honor. There's no meaningful distinction. I think, well, there are some distinctions between the supplemental jurisdiction, but I don't think anything that would be material to this issue. But the government, you may not know the answer to this. In D.C., does the government treat Brown as binding and limit how it charges 924C in the District of Columbia, or is there an ongoing dispute about that? Your Honor, I think I can say that it's our common practice to do this. I don't know how common a practice it is in D.C. I know this issue arose in another case in D.C. I think it was Mejia, which I believe was in the 2020s. So it's not a single issue thing that has happened in D.C., but I can't speak to how prevalent the practice is. I know it hasn't gone to the D.C. Circuit, and I've only seen those two decisions out of the D.C. District Court. Okay. Are you making an argument that territories are different because we don't have federalism issues like we do in the 50 states? Yes, Your Honor. I am making that argument. The issue is, I think there's two differences about the territories. One is we don't have federalism issues, and I think part of that as well is Congress's plenary authority over the territories. So there's certainly no constitutional issue with Congress choosing to predicate a 924C charge based on a violation of the D.C. Code or of territorial law. You know, getting a bit ahead of myself, this does touch a little bit on the constitutional avoidance argument regarding jurisdiction. The point being that if, as Section 924C requires that this defendant be able to be charged in a court of the United States with the underlying territorial offense, that means that Congress will be able to exercise its authority under the provision that gives it authority over D.C. or the provision that gives it authority over the Virgin Islands, the territorial clause. And actually, if you look at the local codes, they have statutory provisions to ensure that there's a requisite link between that local charge in that jurisdiction. Just to go back to the 1986 Amendment, because I think that's an important point, because that seems to be the most clearly addressing the issue here, because the only thing that adding the word federal law to the controlled substances definition could do is limit things like this supplemental jurisdiction in D.C. and the Virgin Islands. It actually makes sense for these drug trafficking crimes and these crimes of violence to be treated differently in this amendment. And the reason is that while the controlled substances offenses are exercises under the Congress's Commerce Clause authority, there is no jurisdictional element that needs to be proven. So, for example, if someone has a controlled substance in D.C., they don't need to then also prove that it had some specific effect on commerce or prove that it was possessed in a certain place. The same thing isn't true for federal crimes, for crimes of violence. Those are generally tied to something called the Special Maritime and Territorial Jurisdiction of the United States, which is federal enclaves smaller than things like D.C. or a federal territory like the Virgin Islands. So, this different treatment is actually a reasonable approach to treating these differently. Unless the court has any questions on ambiguity, I'm going to move on to the absurdity doctrine. I think in applying the absurdity doctrine, the district court flipped the inquiry somewhat. The court looked at the statute, found that it was unambiguous, and then conceived a potential reason that Congress might not have wanted it to operate in the way the plaintext operated. As we've seen in Riccio out of this court, that's not really the inquiry. The inquiry, is there any conceivable justification that Congress could have for wanting the statute to operate this way? Does absurdity kick in just because you can imagine consequences that were unanticipated or seem odd? That's not absurd. Absurd means that the language doesn't work. It just doesn't make sense. I think that's true, Your Honor. I think there is some capacity in the absurdity doctrine for results that are just so off the wall that there is no way that Congress could have intended that. That's not what we have here, though. What we have here, and we said this in our brief, is there's certainly a conceivable justification that Congress wanted to deter gun violence by extending the enhanced punishments in 924C and 924J to all offenses over which federal courts have jurisdiction without the need to prove a separate jurisdictional element. While it's not our burden to provide proof of any conceivable justification, and I see I'm past my time, but while it's not the government's obligation to provide any proof, and while we don't think that this is a case where the legislative history is really where we should be looking, that's actually a specific justification cited by the sponsor of the first 924C, was they didn't want this to be limited to situations where a separate jurisdictional element would work. So your reading of the statute increases the number of Virgin Islands defendants that are death penalty eligible, although the Virgin Islands makes the death penalty illegal, so it puts them in a predicament that other defendants in federal courts aren't in. Is that an absurd consequence? No, Your Honor, and for two reasons. First of all, while this is true of the Virgin Islands, Congress has also, in other circumstances, provided for incorporation of federal, sorry, of state law predicates, which then can provide the basis for a 924J. And I think there's another point that we didn't mention in our brief, but I think it's important for the Court to be aware, 924G, excuse me, J, was added in 1994. So to hold that something about the expansion of the death penalty affects the definition of can be charged in the Court of the United States, a amendment that had nothing to do with, I guess it was about 30 years of 924C, and doesn't, on its face of anything, linking itself to the scope of that term, seems a bit unreasonable to put weight on that. What's interesting, it was actually the same statute in 1924, excuse me, 1994, that defined the District Court of the Virgin Islands as a United States. So I don't see anything in a 1994 amendment adding the death penalty that would meaningfully impact this inquiry. I would also point out, on general principles, nothing about a state, let alone a territory, saying that the death penalty is not a punishment for our crimes means that Congress can't do that. And when we're talking about, and shifting a little bit to talk about uniformity, Congress has, in special maritime and territorial jurisdiction, actually specified death penalty as a penalty for all murders, regardless of whether a firearm has been used. So this idea that Congress, as it has in other places where it exercises plenary authority, has decided to, in a more limited situation, expand the use of the death penalty in the territory, that's just not really an absurd outcome at all. We see this, just to list a few, you see it in the Major Crimes Act involving Indian country, you see it in the Assimilative Crimes Act incorporating state law predicates, you see it in Vicar, you see it in Hobbs Act robbery. Hobbs Act robbery is defined more expansively in the territories. And if this court has held Hobbs Act robbery as a crime of violence. So Congress has made it very clear that 924Cs and 924Js can apply in circumstances in the territories where they otherwise would not apply. Thank you, Mr. Sleeper. Thank you, Your Honor. Mr. Campbell, just to give you a heads up, at some point during your argument, it doesn't have to be at the beginning, but I'd like you to go through the so-called softballs that I took your friend on the other side through. I can repeat them if necessary, but I'm curious as to whether you would concede any of those points or if you want to fight on any of those, the notion that those were softballs for the government. I have a brief introduction and then we can turn to that. Thank you. Good morning, Your Honor. It's Matt Campbell, Federal Public Defender for the District of the Virgin Islands, on behalf of Richardson Dengelman Jr. A decision in the government's favor requires this court to accept the sweeping proposition that the government can reverse a no-seek notice for any reason or no reason at all, anytime up to shortly before trial, with the only remedy being a continuance of the trial date. The government's position would wreak havoc with decades of past practice, eviscerate the court's ability to manage its dockets, deprive defendants of statutory and constitutional rights, and bankrupt the judiciary budget. Here, however, the district court's inherent authority to manage its docket and adjudicate cases, provided ample authority for the court to both set and enforce the jointly requested death notice deadline. Because this court gives district courts wide latitude to manage its cases, the government has failed to prove that the district court abused its discretion in both setting and enforcing the notice deadline. With that, I'll be happy to turn to the court's questions. Frankly, I would prefer if Your Honor asked them, just so I don't miss any. Yeah, well, I'm not going to remember all of them, but let's try. I mean, what I was basically doing was trying to think of counterfactuals where it might make perfect sense for the government to rescind a no-seek notice and file a seek notice. So I guess the first question is, is it your position that once the government has filed a no-seek notice, it can never file a seek notice? Your Honor, I have a twofold answer to that. There are cases that, in other contexts, that have said that the decision to file a no-seek notice is irrevocable. This court's decision in Cassius. We've also cited the Wagoner decision out of the Ninth Circuit. But frankly, I don't think the court needs to go that far. And the reason why the court doesn't need to go that far is that even if no-seek notices are only presumptively irrevocable and not completely irrevocable under certain circumstances, the government would need to demonstrate, at a minimum, good cause for making that change. And that's twofold. Number one, in 3593, it specifically states that when there's an amendment, the government... This isn't an amendment, they say. Technically, it's not. But in a de facto way, it's a heck of a lot more than an amendment. Correct, Your Honor. And what I would point out in that regard, I understand the semantic distinction between an amendment and perhaps a reversal or something of the like. However, what the district court did was set in its orders that any notice pursuant to 3593A needed to be filed first on January 12th of 24, next on February 12th of 24, when it was continued. The government filed a notice pursuant to that order on February 7th that references 3593A. So I think it's a distinction without a difference semantically, but at a practical level, if five aggravating factors were listed in an initial seek notice, let's assume there was never a no-seek, there were five aggravating circumstances, it needs good cause. They would need good cause to make it six. And their argument is, we unequivocally said, we will not file, we will not seek the death penalty. And in fact, we will proceed with either a non-capital trial or a non-capital plea. That was what they said. And what they're saying now is if they file a notice of intent that adds 10, 12, 15, however many, they don't need any cause for that. They need good cause for one, they need no cause for 10. That's ludicrous. But secondly, the government's notice was late. And as a late filing for any court document, you're required to show good cause, and you're also required to show excusable neglect under Rule 45. It was late in relation to what? The notice of intent that was filed in May of 25 was late in relation to the deadline. In relation to what? The February 24 deadline. It was past time. Now, if one should... They should have asked the court, your argument as I understand it is that they should have asked the court to file no pro toque or to ask for a post hoc extension of the February 12 deadline. Correct. They never did that, they just filed it. Correct. And their answer is, well, federal law says we can file this. And the only governor, the only constraint on us is that it must be within a reasonable time before trial. And that's why I asked your friend on the other side, are you arguing that this 3593A supplants the district court's ability to conduct a timely trial and set up the rules for the road for the  Correct. The answer was no, but we'll get clarification on rebuttal on that. But I agree. I agree that I believe the answer was no, but I didn't know how that's possible. No, I frankly, I don't believe it is possible. If the district courts are to have any inherent authority to manage the cases before it, they need to be able to set deadlines. Didn't the February 12th date was keyed on the October 24 trial date, wasn't it? No, it was not. Not in a capital sense. If I can go back just briefly. So there's a super, the initial indictment is filed in October of 23. There's a status conference that occurs on November 8th of 23. At that status conference, the parties jointly requested a deadline for notices for 3593 notices and jointly requested that be January 12th. At that time, there was no trial date. So at that hearing, the government requests a notice deadline with no trial date. I mean, there was a trial date, but it was in December. So the trial date that they already passed. Yes. So for all intents and purposes, what the government is saying now is not what it said earlier below when it specifically requested on its own, a notice deadline completely untethered to a trial date. Then subsequent to that, the courts set the deadline. I believe that was on October, excuse me, November 16th. The courts agreed with the party's joint request and set a notice deadline for January 12th. I believe it was the next day, November 17th, the party submitted a joint proposed trial schedule that included the October deadline, October 24th. And in that joint schedule, the party specifically said, and I believe that's at docket 37, page two, note two, that this is for a non-capital trial. If the government submits a notice, that deadline doesn't hold. The point I'm trying to make is, Judge Porter's question, the government twice asked for first, the deadline for notices, and then second extension that were not tied to any date that it could possibly have been a capital trial. What if the facts were exactly the opposite and the Biden DOJ filed a sick notice in February 2024 and we have an election, and then this DOJ comes in and says, we're going to change that to a no sick notice. Would you say they can't do that? No, this is a capital case that's going to go forward as a capital case that's set in stone? No, your honor, for several reasons. The reversal of a no sick notice into a sick notice infringes on a number of statutory and constitutional protections in a way that the reversal of a sick notice down to a no sick notice does not. And the government tries to focus only on section 3593. But I believe the court needs to consider sections 3005 as well as 3599, which are the two statutes, number one, that provide for learning counsel in capital eligible cases, and number two, provide for a whole host of mitigation investigation, mitigation experts, other kinds of experts. And those kick in when the government files a capital eligible case. So by doing what the government did here, Mr. Dingelman was essentially deprived of rights that he had under those other statutes for approximately 15 months. But we don't have any record of prejudice, I guess, because you were, there's no reason for you to try to make a record on prejudice because the judge is ruling. Is that the response? Your honor, that's a complicated question. If I can take a minute to address several points. The timing of the government's actions here prevented a fulsome mitigation investigation and presentation. And neither one of those things has occurred. The record is clear. Right. But if we're doing a, if this were like a Strickland case, we would do a prejudice analysis your smoking gun prejudice would be, hey, the best person to speak on mitigating factors is the mother and the mother is now deceased. Things like that. You don't have anything like that. You didn't even try to make a record on that, but you didn't really have an opportunity or need to, is that why? No, your honor, I wouldn't phrase it quite that way. This is what I would say in that had the government announced either that a continuance of the October 20, 2024 trial date allowed it to reevaluate the death penalty or had at least filed some notice that it was considering the death penalty. Again, the October 24 trial date would never have been continued. That's in the record. And the government hasn't disputed that the district judge filed that correct. And that's in reference. He found it when he denied the stay and he specifically cited to the declaration was mine at one 46 dash one in the docket. So that is a fact that the trial would have occurred in October, 2024, but for the government. So there's prejudice in spades because that trial couldn't have been a death penalty. Is that what you're saying? Correct. There was a non-capital case up until that point. Would you say it's likely or not likely that the trial would have gone forward in October, 2025 for this appeal? It absolutely would have gone forward. I know the government tries to insinuate some way that it wouldn't have, that there were still motions outstanding. But again, if you look at the transcripts of when that was set, when that trial date was set, we had actually asked for an earlier trial date. The parties agreed to an omnibus in July. We had asked for an end of August trial date and judge Malloy said, there's too many motions pending. I'm going to need more time to decide it. So I'm going to set a date that is fixed, certain, and that the parties can rely on. And I believe he even used the phrase set in stone. And that's when he set the October date. And then with past his prologue, we had the omnibus hearings, July 23rd, I believe the 25th, maybe slightly off on that date, got continued to the 28th. And he ruled on all the motions in time for trial. So the only reason that that trial didn't happen is because the government appealed. Now, the government wants to try to make that argument in order to fit into Wilk. But the difference between this case and Wilk, the 11th Circuit decision that the government referenced, is that in Wilk, well, there's several differences, but in Wilk, there were other outstanding things that would not have been decided by the time of trial. There were still like expert reports that were out that had never been subject to Daubert challenges and the like. So this case isn't Wilk. It's also not Wilk, because in Wilk, there was never a no-seek filed that unequivocally said they weren't going to seek the death penalty. And the seek that was filed was tiny. So Wilk is a different case. It's not our case. It sounds like you've gone a long way towards saying there's always prejudice and always a constitutional problem when the no-seek is switched to a seek. And I'm not seeing that, because I think if we do the counterfactuals, you know, take the simplest example. The no-seek is just inadvertently filed. Like some clerical error, it's filed in the wrong case, and then an hour later or the next morning, a seek is filed. All that prejudice could have happened in the meantime. And that's why throughout the case, it's hypothetical. It's unclear to me how the federal courts should uphold deadlines, or if there's no deadline. I mean, can administrations come in with different policies? I mean, if one administration after an election in which they lost, one party lost, could they just programmatically file no-seek orders? Of course, they have the power to do that. They're still controlling the policies of the Department of Justice. But if that program is implemented, and a month later or a couple weeks later, you know, can't the incoming administration say, no, that was really bad policy. We don't want to do that, and we're sending those. You know, my first answer would be, that's not this case. Well, I know that. That's why I said it's a hypothetical. I understand. But it's really— We're trying, we're trying, I think. I mean, it's kind of this case. It's just a matter of time. But in principle, it's kind of this case. Well, for the time differences. Right. But my hypothetical presupposes that there's such a short amount of time that little or nothing has happened. It also presupposes that the trial court has not set up the rules for the road. And there aren't actually court orders saying you must do this by this date and do that by a different date. I mean, I think court district judges, again, having been there and done that, district judges have not only the right, but the duty to set up an orderly process by which all counsel can govern their conduct. And if it's true, and I think the government agrees with me, that district judges have that right and duty, it stands to reason that they also have the duty and the right to enforce their orders when violated. You know, I think that's 100 percent correct. And the government doesn't dispute that Judge I'm not sure in the abstract whether they dispute that he had the authority to generally enforce a deadline. Their entire argument, I think, ultimately rests on whether the 3593, a reasonable time before trial, constricts the district court in a way that prevents the court from exercising its authority. And it cites no case law that says that. And when you read 3593, it speaks about what the government shall do if it believes that the death penalty is warranted. It shall file notice. But nothing in 3593, there's no text that actually says it affects the inherent authority. There's nothing there. So on the one hand, there's also no federal law that says the government has to file no-seek letters. I mean, it seems to be a custom and a policy. I mean, maybe at some point, a judge is going to say, let me know whether you're going to file a no-seek letter. And some, you know, government lawyer is going to say, we respectfully object, Your Honor. We don't have a duty to file a no-seek letter. And they're not going to do it. And we're thinking about a no-seek decision. And the only thing that constrains us on a no-seek decision is that it be a reasonable time before trial. Well, Your Honor, respectfully, I don't think that would be correct. Why? Because number one, the court has inherent authority to manage its documents. Well, the matter presupposes the court issued an order, though, right? This is where Article III steps in and says, OK, look, government, I'm going to respect your right to about this. And I respect that you don't want to make a precipitous decision to pursue a death penalty against somebody. But I need to conduct an orderly process here. And I'm going to have to give you a deadline on that. And then if the government wanted, the government could say, no, you have no right to have a deadline. And then we end up back with this basic question, which is, from 3593A, how much has Congress constrained the federal courts from controlling their dockets and setting up an orderly process? As Your Honor's question is phrased, I think the answer is it hasn't in any meaningful way. And I think, if I understand sort of the hypothetical that Your Honor was speaking about, if the court were to say, I'm not going to set a deadline for notices, you guys figure it out, then we're not in the same realm that we are in this case, where the government affirmatively represented something that it now says, essentially, shame on us for believing you. That's what it says. If they do that at a point in time that everyone must agree is reasonably in advance of trial, everyone agrees to that, is there anything that would prevent them from going forward with the seek notice? Stipulate that it's reasonable in advance of trial. I just want to make sure I understand Your Honor's question. You mean not in violation of a court order? You mean if there was no deadline set? No deadline. And then they were to? Yeah, let's assume that. Well, if there was no deadline set, and you can go both ways. First, there is a court order, but it's still, everyone must agree, reasonably in advance of trial. Okay. If there was no deadline, and they filed a seek notice, then I think the defendant could challenge it as not reasonably before trial, and the district court could adjudicate. The hypothetical is that it is, everyone must agree it is, reasonably in advance of trial. You don't have a credible argument there. If we stipulate that there's no deadlines, the district court, the district judge is incredibly laissez-faire, lets the lawyers sort of control the deadlines, and we stipulate that the seek notice is filed in a reasonable time in advance of trial, you don't have an argument. I apologize. I'm not sure I'm understanding the hypothetical. You mean there's no dates on the calendar at all? There's not even a trial date? We'll do it two ways. The first way is there's no date. Right. I guess, hypothetically, a defendant could, I don't know what. Well, the defendant's argument, let me put my defense lawyer hat on for a minute. The defense lawyer would be, your honor, this is not reasonable before trial because my client has a speedy trial right out, and because my client has a right to go to trial within, is it 55? It's been a while. 70 days. Because my client has a right to go to trial within 70 days, this is not reasonable. Well, because 70 days is too short a time. It could be reasonable. So that's an argument. I don't know. I think there are some other arguments that could be made, however. And again, I would suggest that we need to go back to 3005 and 3599, because in that hypothetical, if the judge is very laissez-faire and lets the party sort of manage it, and the case has proceeded for two years already, and the defense has filed motions, interviewed witnesses, all in a non-capital context, and has not had learned counsel, who is specifically prioritized as a person that works with various psychological experts. But then you still have to show prejudice, because with the stipulation that it's filed within a reasonable amount of time, that presupposes that learned counsel can then be hired after the seat notice and get brought up to speed and try the proper way. And I think what I'm struggling with is the idea that a defense lawyer is going to stipulate that you can file a death notice whenever you want, and it will necessarily be a reasonable time before trial. I think that's what I'm struggling with. No, no. A year and a half in advance of the trial date, would that be a reason? So if there's a trial date set for June of 2026, and it's January of 2025, I think it could depend. And the evidence in the record shows that in the last 20-plus years, the average time between the filing of a death notice and trial date is 28 months. So we can play with these... All right, let's go to the other hypothetical, which might be more likely. Yeah, there is a reasonable trial schedule that's set, and the government changes its mind and files a seat notice. That is, everyone must agree reasonably in advance of the court's trial date. Yeah, it's a very busy docket. One of the busiest courts in the country. The court sets a trial date four years hence. Government files a no seat notice on day one, and on day 30 or 60, government files a seat notice. You've still got almost four years between that seat notice and trial. I think that hypothetical is really getting at the question of, is it absolutely irrevocable or not? In a way, yeah. And what I would say is, again, there are cases that say it in other contexts, it is irrevocable, granted in other contexts. But if the government's rule is accepted, those cases are wrongly decided. That's true. That's a fact. But the court need not get that far because if the government files a no seat, and then subsequently files a seat, both based on 3593A, as we've talked about, as well as if it's late filing, that may not be involved in this hypothetical. But regardless, they still have to demonstrate good cause. Now, I believe it was Judge Hardiman who said, well, they mistakenly filed the wrong one and figured it out the next day, or something like that. That may be sufficient to get around good cause. But waiting 15 months, having a different attitude about the death penalty, and I think the government made an important point when it said it was a different attitude, or it was a policy. That policy could be good cause in theory, but it still needs to not prejudice the defendant, and it needs to be consistent with the orders of the district court. And if it was late, it would need to be based on circumstances beyond the government's control. And certainly policy differences are well within the government's control. So if it's late under Rule 45, that wouldn't suffice either. Policy differences, I mean, they're within the electorate's control. I'm not sure they're within the government's control. I'm sorry. I'm not sure that policy differences are within the government's control. They're within the electorate, the voters' control. I mean, that's sort of what happened here. Well, I think case law would uphold the idea that the Department of Justice essentially is an entity, and whether or not an individual changes, and I think that brings up an important point, which is there's really no limiting principle to what the government is saying, because presumably, they're saying, well, we think it's rare because we think that, but there's really no limiting principle that says, well, what happens if there's a new attorney general that comes in? Not a new administration, a new attorney general. What happens if there's a new criminal chief? What happens if the individual U.S. attorney shifts? We can ask them, but I think that is the argument that the executive branch has this kind of discretion, and it's pure discretion. I believe that's the argument as well, Your Honor, but my point is any idea that, well, this is rare, we don't really have to worry about it. Number one, it's not necessarily rare. They've tried to reverse three no-seeks in the District of the Virgin Islands. They've tried to reverse, I believe, it's 15 total around the country at last count. There's a number of no-seeks that are still under evaluation, so it's not rare, and there's no limiting principle to it, so I think that's important to keep in mind. And really, if they try to say, this is so rare, don't worry about it, that's a good cause argument, and they've waived that because here before this court, they're not making any good cause challenges. They're simply saying, we can do what we want, when we want, how we want. All right, we've been badgering you on this issue. Let's give you a chance to address the 924C issue. Yes, sir. Going to the 924C issue, we do believe that there is ambiguity in this statute, and we agree with the government that their position in this case can't be reconciled with Brown, that a decision in their favor would be in direct conflict to Brown. There are no ways to manipulate the situation otherwise, and there was a question, I don't recall who asked about whether this is going on in D.C. or not. The Mejia decision followed Brown. There have been no Court of Appeals decisions from the D.C. Court of Appeals, and when I shepherdized, etc., there were no additional decisions. All right, let's assume for a minute Brown's decided. D.C. is unique. It's the federal district. States are different than the District of Columbia. Territories are different than states. The federal death penalty has been pursued and applied in numerous states that have abolished the death penalty. What's absurd here? I mean, this seems precedented, not unprecedented. Well, I think the absurdity argument in large part would stem on the fact that such a monumental sea change of difference would occur without anybody bringing it up. Congress has written a statute that we would argue is hardly the model of clarity. Now, I did want to mention the government talked about the 1986 Amendment where the word federal was used. I think it's also instructive that subsequent amendments took that out. If you look at it now, the word federal is not there. Instead, it specifically references several, the Controlled Substances Act and the Maritime Act for MDLEA cases and the like, although it doesn't even reference every single type of federal drug offense. So, whatever Congress may have been thinking when it added the word federal, it later took it away. So, what the government is essentially asking this court to do is put great weight on the addition of a term that Congress then took out. I think that's a dubious proposition. And I think that the absurdity here is taking what is hardly precise wording and applying it in a way that is severely punitive to one district out of 94 without Congress ever evidencing any intent to actually do that. And it's doing that, and I understand territories are different than states and some of the federalism concerns are different, but it's doing that at the same time that historically, the revised Organic Act is being amended to provide greater, for lack of better term, sovereignty to the Virgin Islands. So, could we substitute the word autonomy for sovereignty? I couldn't think of the right word. I'm happy to use the word autonomy. Well, when... When there are territories. Absolutely. Understood. I'm not suggesting... Autonomy is a better word. When Congress in 1924C talked about offenses for which the person may be prosecuted in a court of the United States, and when they in 1994 said the Virgin Islands is a court of the United States, doesn't that indicate what Congress's intention was? Well, I think the problem is that when we look at that language, we have a reference to the defendant. So, presumably that means a case specific. A court of the United States. It's unclear what that means. Does that mean the specific court of the United States that the defendant is in? Maybe. Does it mean... Is A being used in the same way that the word any might be used? You've got a definite article, B, an indefinite article, A, to modify the court. Does it matter since either way the Virgin Islands is a court of the United States? Yes. It matters because if it's susceptible to different interpretations, then it's ambiguous. And then legislative intent matters because the government's position is the court never gets to legislative intent. And our position is if it's ambiguous, you do. So, it could mean the defendant being a case specific who's eligible, who can be in any court of the United States. Well, clearly in this circumstance, Mr. Dangleman could not be prosecuted for a VI local offense in any court of the United States. So, not to sound too hyper-technical, but I will. The word A in conjunction with the word V seem like they mean different things and the government wants to interpret them the same way. Secondly, I think there's an issue because what that would ultimately result in is a situation where some defendants could be prosecuted for a 924C based on first degree assault. Let's just use this as an example. And some defendants in the Virgin Islands, I mean, could not because the district court only has jurisdiction if the local offenses are sufficiently related or part same transactions. Well, that's not always the case. So, you could end up in a situation, depending on the reading of the statute, you end up with a situation where one defendant charged with first assault in 924C, that's legit. Another defendant charged with the exact same offenses, that's illegitimate, needs to be dismissed. And how does that provide sufficient notice to people as to what is prohibited and what is not? So, this is not a straightforward question because the jurisdictional issue of sufficiently related same transaction still applies. So, when the government says, well, there's no jurisdictional problem here, that's not true. There is a jurisdictional problem here and it will not be clear to anybody when it would be allowed to be prosecuted in the District of the Virgin Islands because that requires a determination that simply won't be made until well after the fact. I think I've gone past my time. Thank you very much, Mr. Campbell. We'll hear rebuttal. Counsel, my minutes had two S's in your last name. I apologize. Is it Glazer, not Glasser? It's actually confusingly pronounced Glasser. You pronounced it correctly. Well, I'm glad the minutes had two S's. Exactly. On rebuttal, I'd like to make just a few points, starting with a factual one with respect to whether the deadline for filing the government's seek notice was tied to the trial date. If you look at the supplemental appendix on page 10, the district court, about a page before setting the deadline for filing the seek notice, said, I'm thinking realistically at a minimum we would need to set a trial date at least six to eight months from now. So, when the district court set that deadline originally in January and moved to February of 2024, the district court and the parties were thinking about a trial date at least six to eight months out that turned out to actually be 11 months out from the hearing at which they discussed it. If I can turn then to sort of some of the more legal arguments, my friend on the other side argues that the government's position is ludicrous because we would need to show good cause were we to add one aggravating factor before trial when five already existed, but we can add ten new aggravating factors in a notice of intent to seek the death penalty. I think that argument misunderstands to a degree the nature of the good cause inquiry, at least as it's developed in the FDPA context. So, as we explain in our reply brief, the courts that have looked at good cause for amending a notice have looked at whether the new factors that were added have a, quote, plausible connection to the facts, whether there was no deliberate delay, and whether there was no prejudice. So, it's not a high bar to show that there was good cause for amending a prior notice, but the first notice, and this is very important, the government believes the first notice is always, always bound by the reasonable time before the trial requirement, and I think we have sort of fundamentally a disagreement with Mr. Dangleblen about the purpose of the FDPA's requirements for a notice. In our view, the purpose of the notice is to ensure adequate time to prepare for trial. Now, it would be nice if you had notice the day of the indictment. It would be nice if you had notice... Yeah, I think that's an easy part of the case. Right. The hard part of the case is you didn't file a notice as required by the district court order. We all agree on that, right? It's correct. You didn't seek an amendment of the district court order. You didn't rescind the prior no-seek. The record is full of contradictions. Your Honor, we made clear in our request for a stay of the proceedings that we were re-evaluating the decision based on the attorney general memorandum. We requested a stay of the proceedings. We agreed to the appointment of learned counsel. I see my time is... Keep going. No, I mean, all that was wise and prudent to give the court a heads up about that, but you also didn't seek relief from the court order that said you needed to file it by a certain date. Instead, you just went ahead and filed it without requesting modification of the court's order. Your Honor, I think we did, at least in essence, request relief from it. The reason we did is that the district court required us as part of our reply in support of our motion to stay, required us to brief whether or not we had any entitlement to change to a seek position after indicating that we were not going to seek the death penalty. We fully briefed that once. We briefed it again, obviously, in response to their motion to strike the notice, but we fully briefed in front of the district court. After giving it notice, we were reconsidering. We fully briefed whether or not we had that entitlement. It's true that we didn't file a motion seeking relief from the court-imposed deadline, but we presented all the same arguments to the district court in connection with our If you had filed a motion for relief from the February 22 deadline, and the court had denied that motion on the grounds that you made your election and you can't change it, then where would we be? Your Honor, I think that would then raise the question of whether the government could appeal from that order. I think it would be a harder case than the order striking a notice of intent to seek the death penalty. The government's position is that we can still file the notice even though the district court had effectively told us in denying the motion to stay, no, it's too late. You had your one shot. We filed the notice. Now we think it's properly before this court. This court has jurisdiction. I think it would have been a much closer question in that case. To be clear, the same arguments we would have made in a motion seeking relief from the deadline are the arguments that we made to the district court before we filed the seek notice when we were reconsidering. We said that was tied to a trial deadline that was vitiated by the movement. The deadline was vitiated by the movement of the trial deadline. My friend on the holding that the government can never change its mind. He wanted to stop short of saying that and fell back on the good cause requirement. As we've explained, the good cause requirement doesn't apply to an initial seek notice. In effect, although Mr. Dangable understandably doesn't want to go there, ruling in his favor requires this court to say that once the government has reached a no-seek decision, it cannot reevaluate. That's inconsistent with the Supreme Court's understanding of executive duty. Let's assume we disagree with him on that. Is it your position that 4593 supersedes the district court's ability to set a schedule? Your Honor, I would say yes in certain circumstances. What are those circumstances? So, Your Honor, I guess the way I would explain it is the district court has, absolutely has discretion to set a schedule for the orderly proceedings in the district court. We have no dispute with that. But to the extent the district court sets a schedule that holds the government to something beyond the reasonable time before trial requirement, and to be clear, that reasonable time is going to be a range and it's going to be fact-specific. I think the parties are in agreement on that. But to the extent the district court does that and imposes a deadline that is not tied closely to the reasonable time before the trial requirement, the district court abuses its discretion. And if the court has no further questions. Well, okay. And the reason why there's an abuse of discretion here is what? Well, Your Honor, there's a few bases for the district court's decisions, but I think the decision to strike, but I think our basic pitch at a high level is the district court abused its discretion in its deadline-based holding because that deadline was not tied to a reasonable time before trial, but was instead tied to a trial date that was subsequently continued. So that is an impingement on the district court's ability to set a schedule. You're saying that when it comes to death penalty cases or potential death penalty cases, the district court cannot set a schedule that in any way alters the government's power to file a seek notice a reasonable time before trial? I think, Your Honor, with the way that sentence ended, yes, I would agree. I wouldn't say that the district court can't set a deadline that impinges on the government's ability to file a seek notice. But I think I would agree, yes, if it impinges on the government's ability, as long as it's filed a reasonable time before trial, then that's correct. That's our position. Okay. Well, I guess the issue here is, did the court abandon its initial case management schedule when it vacated the first trial date and didn't set a new one? So everything was just sort of toasting along until everyone said, hey, look, we're probably going to change that seek notice. And then everything started to change. Your Honor, I don't want to attribute bad faith to the district court in setting a trial date because, I mean, I think it was fair to set a trial date. But I would agree that, again, until that May status conference, there was no trial date. So when we filed our... I'm not talking about bad faith. I'm talking about the continued effectiveness of the February 12 deadline and the October trial date. Like, doesn't that sort of all just the trial date goes away and everything just goes along for a year and no case management order? Your Honor, I don't think it... Perhaps it doesn't evaporate entirely, but at least when, as here, the government indicates to the district court, we're reevaluating based on the change in events, the continuance of the trial, we're reevaluating, then I do think it evaporates in the sense that it's no longer binding on a sufficient basis to strike the government's notice of intent. No further questions. We ask the court to reverse. Thank you to all counsel. The court will take the matter under advisement. Can adjourn for the day. Oh, I'm sorry. Go ahead, Mr. Sleeper. I didn't know that you reserved time. Your Honor, very briefly, a few points I wanted to respond to. My friend on the other side references harsh results and not clear contemplation. This court has made clear that harsh outcome is not grounds for application of the certity doctrine, and the Supreme Court in Barr has made it clear that it's unimportant that a particular application is not contemplated. To talk a bit about the 1986 amendment in response to what defense counsel said, the 1988 amendment which specified the three specific statutes was a clarifying amendment and is entirely consistent with what was there before. By specifying the three, it eliminated assimilated crimes act that could be based on other substances, which was part of the definition from 1986, and it similarly carved out something like a D.C. code offense. Bottom line here is the clearest indication of intent is the plain text. Congress used court of the United States. They could have very easily just said federal crime or violation of ambiguity here. Potentially there could be some venue limitations that come in here. The defendant can be charged in a court of the United States with a crime. That's what the statute says what we should be looking at. As far as concerns about ambiguity about whether something could give rise to a 924C, you see that in the Vicar context, for example, as well. That's not anything that's at all unique. That's not true ambiguity. That's just an application of statutes, and there's nothing there that would take away from the government's interpretation. Unless the court has any questions for me, we would ask that you affirm on both issue one and two. Excuse me, reversed on both issue one and two. I'll stick to it. Thank you, Mr. Sleeper. Thank you, Mr. Glasser. Mr. Campbell, appreciate the helpful arguments. Court will take the matter under advisement. We can adjourn.